# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DONALD J. BUNYAN, PHILLIP C. CENATIEMPO, DAVID M. FOULKES, RONALD LAURVICK, and JEAN L. HUNT, as personal representative of the estate of Michael E. Lewis, <br><br> Plaintiffs, <br><br> vs. <br><br> SPECTRUM BRANDS, INC., and UNITED INDUSTRIES CORP., <br><br> Defendants. | Case No. 07-CV-0089-MJR |

## MEMORANDUM and ORDER

**REAGAN, District Judge:**

Plaintiffs filed this putative collective action on February 2, 2007 (Doc. 2) and amended their complaint on August 14, 2007 (Doc. 43). Plaintiffs allege that Defendants unlawfully refused to pay full overtime wages in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201. Defendants argue that the Plaintiffs fall within an exemption to the FLSA's overtime pay requirements. On April 13, 2007, Magistrate Judge Philip M. Frazier held a scheduling and discovery conference (Doc. 20). At that time, the Court entered an order limiting discovery to the collective action certification issue. This matter is now before the Court on Plaintiffs' motion for conditional certification of the proposed collective action (Doc. 79).

### A. Introduction and Background

Plaintiffs were originally employed by United Industries Corp., which was acquired by Spectrum Brands, Inc. in 2005. Defendants' work involves the packaging of various chemicals,

including insecticides and herbicides. Plaintiffs were employed as production supervisors within Defendants' St. Louis County, Missouri facilities. Work at these facilities is conducted in three 8-hour shifts—7 a.m. to 3 p.m.; 3 p.m. to 11 p.m.; and 11 p.m. to 7 a.m.—though Plaintiffs did not necessarily work on the same shift or production line.

Plaintiffs allege that they spent 50% or more of their time maintaining and servicing production line machinery. However, they also claim that they spent a large portion of their time (40%) working alongside the operators on the production line, where they placed chemicals into containers. The remainder of their job consisted of doing administrative work (10%).

Plaintiff Bunyan claims that he was originally compensated at an hourly rate and was given time-and-a-half for overtime work. At some point, however, Defendants instituted a Compensation Incentive Plan, which provided that compensation would be paid as a predetermined specific amount per pay period (i.e., salary). It is this plan that Plaintiffs say violated their rights under the FLSA.

Under the new plan, Plaintiffs' work responsibilities did not change. It appears that the salary under the plan was based on an 8-hour shift, though Plaintiffs did not receive overtime pay unless they worked more than 10 hours. According to Plaintiffs, this resulted in a pay decrease because they were always required to report 30 minutes prior to an 8-hour shift and remain on duty for at least 30 minutes after the shift ended. Essentially, Plaintiffs argue that Defendants consistently paid them for 8-hours of work, even though they worked 9-hour shifts or longer. Irrespective of the fact that their work weeks always lasted at least 45 hours, they allege that Defendants' compensation plan failed to compensate them for overtime.

Moreover, Plaintiffs allege that even when Defendants did pay them for overtime,

the plan only permitted compensation for additional time worked at the end of the shift, such that they never received credit for the 30 minutes prior to its start. Plaintiffs also claim that when overtime pay was awarded, it was improperly calculated because it did not account for retroactive raises or shift premiums.

Plaintiffs challenge this system as a violation of the FLSA, 29 U.S.C. § 207. They seek to proceed in a collective action under § 216 and request compensatory damages for all unpaid overtime, liquidated damages under the FLSA, and injunctive relief.

Plaintiffs now move this Court to conditionally certify a collective action in this case and require Defendants to send notice to all members of the putative class. Defendants argue that Plaintiffs cannot show that the proposed class members are similarly situated. On July 18, 2008, the Court held a hearing and heard argument on the underlying motion.

Having thoroughly reviewed the parties' arguments, the Court hereby **DENIES** Plaintiffs' motion for conditional certification as a collective action (Doc. 79).

## B. Analysis

Plaintiffs seek conditional collective action certification under **29 U.S.C. § 216(b)**, which provides:

> An action to recover the liability [under the FLSA] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Thus, whether a collective action should be certified depends on whether the employees in the proposed class are "similarly situated."

As the FLSA itself makes a collective action available to claimants, the standards and procedures provided by **FEDERAL RULE OF CIVIL PROCEDURE 23**, which governs class actions, are inapplicable here. For instance, putative class members in a Rule 23 proceeding remain class members until they "opt out." Under the FLSA, however, putative class members must "opt in" if they wish to participate in the action.

It is within the sound discretion of the district court as to whether or not to certify a collective action under § 216(b). ***See Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001).**

1. Establishing the Proper Legal Standard

The level of scrutiny the Court uses to assess the certification issue varies depending on the stage of the litigation. While the Seventh Circuit has not provided a particular standard for determining when certification should be granted, the Southern District of Illinois follows the majority of district courts and typically applies an *ad-hoc* two-step process. ***Perry v. National City Mortg., Inc.*, Case No. 05-CV-0891, 2007 WL 1810472 (S.D. Ill. June 21, 2007).** In either step, the plaintiff bears the burden of showing that the employees are similarly situated. ***Bouaphakeo v. Tyson Foods, Inc.*, Case No. 07-CV-4009, 2008 WL 2645759, \*12 (N.D. Iowa July 3, 2008) (slip opinion).**

The first step typically occurs where the parties have engaged only in minimal discovery. At this stage, the Court conducts a more lenient analysis of whether potential class members are "similarly situated," though mere allegations are insufficient, and "some evidence to support the allegations is required." ***Bouaphakeo*, 2008 WL 2645759, at \*12.** If plaintiffs satisfy this hurdle, the class is conditionally certified, and potential class members are given notice and an

opportunity to opt in. Certification is "conditional" in the sense that it is not final and may be reassessed once more discovery has been conducted.

The second step occurs after substantial discovery is complete, at which time the party opposing collective action typically moves to decertify the class. ***See Perry*, 2007 WL 1810472;** ***Flores*, 289 F.Supp.2d 1042, 1045 (N.D. Ill. 2003);** ***Rollison v. CC Servs., Inc.*, Case No. 05-CV-4193, 2006 WL 15696824;** *see also Smith v. T-Mobile USA, Inc.*, **Case No. 05-CV-5274, 2007 WL 2385131 (C.D. Cal. Aug. 15, 2007).** At this stage, the Court makes a stringent, factual determination as to whether the members of the class are similarly situated. ***Perry*, 2007 WL 1810472.**

Importantly, Plaintiffs are not required to prove the merits of their claim at either stage of the certification process—that is, they need not show an actual violation of the FLSA. ***Bouaphakeo*, 2008 WL 2645759, at \*13.** The Court's concern throughout the two-step process is whether certification will aid the litigation in light of § 216(b)'s fundamental purposes: "(1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves 'common issues of law and fact that arose from the same alleged activity.'" *Id.* **(citing *Kautsch v. Premier Communications*, Case No. 06-CV-04035, 2008 WL 294271, at \*2 (W.D.Mo. Jan. 31, 2008) (quoting *Moss v. Crawford & Co.*, 201 F.R.D. 398, 410 (W.D.Pa.2000))).**

Here, the parties are unable to agree which stage the Court's inquiry should begin. Plaintiffs request that the Court conditionally certify the class proceeding under the first prong. Defendants argue that over fifteen months worth of discovery has been conducted, which eliminates the need for conditional certification. As such, Defendants argue that the Court should move

directly to the second step and the more stringent analysis.

There is support for Defendants' position. It is clear that courts permit a more lenient showing in the first stage because the parties have usually had very little time for discovery and minimal evidence is available at the time. Courts also recognize that once substantial discovery has been conducted, plaintiffs face a higher burden in proving that they and potential class members are similarly situated.

Thus, where plaintiffs request certification for the first time after significant discovery has occurred, some courts collapse the two-step inquiry into one and consider only the second inquiry. In ***Harris v. Fee Transp. Servs., Inc.***, the Northern District of Texas explained:

> At the initial stage, a court ordinarily possesses "minimal evidence" and is thus instructed to apply a lenient standard in determining whether to conditionally certify. . . . But where the parties have had the opportunity to conduct discovery on the issue of certification, the similarly situated inquiry is more stringent. *Basco v. Wal-Mart Stores, Inc.*, No. 00-3184, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004). Courts generally consider the evidence submitted and the two-step inquiry collapses into one. *Id.* ("[I]n light of the substantial discovery that has occurred in this matter, the Court will consider the criteria for both the first and second steps in deciding whether it should certify."); *see also Pfohl v. Farmers Ins. Group*, No. CV-03-3080, 2004 WL 554834, at *3 (C.D. Cal. Mar. 1, 2004) (finding that where discovery relating to the issues of certification had been undertaken, the court could proceed to the second stage of the analysis and weigh the relevant factors to determine whether plaintiffs were similarly situated); *White v. Osmose, Inc.*, 204 F.Supp.2d 1309, 1313 n.2 (M.D.Ala.2002) (finding it appropriate to consider the evidence submitted by the parties when discovery had been conducted); *Ray v. Motel 6 Operating Ltd.*, No. 3-95-828, 1996 WL 938231, at *4 (D. Minn. 1996) (applying a more stringent standard at the initial stage because "the facts before the Court are extensive [and] there is no need for discovery in order to reach a determination"). In the present case, the Court's Scheduling Order gave the parties over seven months to conduct discovery related to the certification issue; the Court finds this sufficient to engage the second step of the analysis. *See Brooks v. Bellsouth*

*Telecomm., Inc.*, 164 F.R.D. 561, 568–69 (N.D Ala.1995) (finding that a three month period for discovery was extensive enough to prompt the second stage of the analysis).

**Case No. 05–CV-0077, 2006 WL 1994586, \*3 (N.D. Tex. May 15, 2006).** Therefore, a court following this approach moves directly to the second prong.

On the other hand, where substantial, but not all discovery occurred prior to the plaintiffs' motion for certification, the Northern District of Iowa recently applied an intermediate approach. In *Bouaphakeo*, the district court incorporated the procedural aspect of conditional certification with the substantive analysis appropriate under each prong:

> The court will determine whether conditional certification of a collective action is appropriate by evaluating all the facts that have thus far been placed before it. Thus, procedurally, the court is not making any final decisions, and [defendant] will have an opportunity to later decertify the class if the court approves conditional certification and authorizes notice. Furthermore, substantively, the court will ultimately use the more onerous second stage analysis to account for all the important facts learned through discovery that inform what putative plaintiffs, if any, are similarly situated to existing plaintiffs.

**2008 WL 2645759, at \*15.** In other words, where plaintiffs successfully make a more stringent showing based on the available evidence, the class may be conditionally certified, thereby giving defendants an opportunity to move for decertification upon the completion of discovery.

In cases such as this one, where substantial but not all discovery has taken place, the intermediate two-step approach seems particularly appropriate. Here, the Magistrate Judge held a scheduling and discovery conference on April 13, 2007 (Doc. 20). At that time, the Court limited discovery "to the collective action certification issue. In the event that the collective action is certified, plaintiffs' counsel shall request that another scheduling conference be set to discuss a further truncated discovery schedule which will allow the parties to participate in a meaningful

settlement conference."[1] The Court also provided that any motion to certify the collective action was to be filed no later than February 1, 2008.

As a result, the Court provided nearly ten months for discovery on the issue of whether the plaintiffs are similarly situated. Ultimately, Plaintiffs failed to meet the prescribed filing deadline and were given and extension through March 17, 2008 to file a motion for certification (Doc. 63).[2] By that time, over eleven months of discovery had been conducted. To date, over fifteen months have passed since the initial discovery conference. Within that period it is clear that at some point, Plaintiffs acquired a list of other production supervisors in the St. Louis County facilities as potential members of the proposed class (See Doc. 69-2, Exh. 4).

It is clear that the parties have conducted a substantial amount of discovery in this case. They have exchanged interrogatories, conducted depositions, and exchanged a large number of documents. The Court cannot close its eyes to the amount of discovery already performed in this action. At the same time, the Court is cognizant that Plaintiffs only seek conditional certification at this point and that discovery is not complete. Taking the intermediate two-step approach permits the Court to determine whether a sound basis exists for proceeding conditionally as a collective action while also considering all evidence available at this time. Additionally, because discovery

---

[1] Plaintiffs argue that the schedule provided by the Court provided for initial discovery on the issue of whether a conditional collective action could be certified. However, a common sense reading of the Order suggests otherwise. The Court intended there be a round of discovery on the collective action issue and did not mention an initial conditional certification phase. The second round of discovery was clearly to be aimed at the merits of the plaintiffs' claims, as the Court specifically states that discovery in that phase would "allow the parties to participate in a meaningful settlement conference." Plaintiffs fail to explain how additional discovery on the certification issue would facilitate such a conference.

[2] The Court later granted yet another extension of time to April 14, 2008, after Plaintiffs realized they had failed to attach a memorandum of law supporting the initial filing (Doc. 77).

is not yet complete, conditional certification, if granted, permits Defendants to make a fully informed challenge to certification once discovery concludes. As such, the Court's analysis proceeds under the intermediate approach.

2. Analysis Under the Intermediate Approach to Conditional Certification

Plaintiffs seek conditional certification for "all employees of Spectrum Brands Inc., formerly known as Rayovac Corporation or United Industries Corporation a/k/a Spectrum Brands, who were, at any time during the last three years, paid according to the 2000 Production/Receiving/Rework Supervisor Computation Incentive Plan."

As a preliminary note, Plaintiffs appear to seek a collective action with a class of plaintiffs throughout the United States. Defendants argue that this is improper because Plaintiffs' complaint confines the class to employees in Spectrum's St. Louis County, Missouri facilities. In response, Plaintiffs argue that Count II of their complaint expands the class to include potential plaintiffs employed by Spectrum throughout the United States.

Further inspection suggests that if Plaintiffs intended to allege a nationwide class in Count II, they failed to do so. Count II realleges the claims in Count I and states that the compensation plan also "applied to production/receiving/rework supervisors who might not have done exactly the same mechanic/supervisor work as these four Plaintiffs at the same exact locations" (Doc. 43, ¶ 46). Plaintiffs then state that they "seek to prosecute their FLSA claims as a collective action on behalf of all present and past employees of Defendant Spectrum Brands similarly situated, in addition to those who did supervisor/mechanic work at the locations where Plaintiffs were employed in connection with the manufacture and packaging of insecticides, herbicides and other products" (Doc. 43, ¶ 7). Plaintiffs argue that Paragraph 47's "all present and past employees" and

"in addition to" language indicates a nationwide class action; in other words, the action is pursued on behalf of every similarly situated employee of Spectrum Brands.

Plaintiffs' complaint is not a model of clarity, and the Court finds Plaintiffs' position untenable. The Court notes that Plaintiffs never specifically allege, either directly or through incorporation of Count I, that Spectrum applied an unlawful policy to a nationwide class of employees. Additionally, taking Paragraphs 46 and 47 together, it appears to the Court that Plaintiffs draw a distinction between those doing "mechanic/supervisor work" in its St. Louis facilities, such as the named Plaintiffs, and "production/receiving/rework supervisors" at those same locations (Doc. 43, ¶ 46). Thus, the Court construes Paragraph 47 not to open the potential class to a nationwide group of employees, but rather as an attempt to include a group of employees who are subject to the compensation plan, yet perform a broader set of work duties than the named Plaintiffs. At any rate, Count II does not clearly indicate a nationwide class.

Accordingly, the Court finds that any request for conditional class certification must conform to the class indicated in the complaint. As such, the Court construes the instant motion to include only those similarly situated individuals who are subject to the compensation plan and employed in St. Louis County, Missouri.

a. Analysis Under Step One

The Court now turns to the issue of whether the allegations and factual record to date support conditional class certification. The Court must first determine whether Plaintiffs have met their burden of showing, under the more lenient analysis, that they and potential claimants are similarly situated.

As previously explained, at this stage the Court conducts a more lenient analysis in

determining whether Plaintiffs and the potential class members are "similarly situated" victims of an unlawful policy or plan. **Bouaphakeo, 2008 WL 2645759, at \*12; *see Perry*, 2007 WL 1810472, at \*2; *Rollison*, 2006 WL 15696824.** However, mere allegations are insufficient, and "some evidence to support the allegations is required." **Bouaphakeo, 2008 WL 2645759, at \*12.** Additionally, some Courts have required plaintiffs to present evidence that "other similarly situated individuals desire to opt in to the litigation." **Bouaphakeo, 2008 WL 2645759, at \*12 (quoting *Parker v. Rowland Express, Inc.*, 492 F.Supp.2d 1159, 1164-65 (D. Minn. 2007)).**

The parties disagree, however, as to how minimal this showing can be. Pointing to language in *Perry*, Plaintiffs argue that they need only "demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." **2007 WL 1810472, at \*2 (quoting *Flores*, 289 F.Supp.2d at 1045).** In other words, Plaintiffs believe the Court need only consider evidence supporting the allegations (1) that an unlawful compensation plan existed and (2) that Plaintiffs and potential claimants were all subject to that plan. Defendants, on the other hand, argue that the Court should require some basic showing that the Plaintiffs and potential claimants are similarly situated in their job duties as well.

The Court agrees that the "modest factual" showing does require at least some minimal support for Plaintiffs' allegation that they, along with potential plaintiffs, are similarly situated in their job duties and their compensation plan. Even in *Perry*, the Court clearly considered evidence that the day-to-day activities of defendants' employees differed depending on their experience and number of clients. **2007 WL 1810472, at \*3.** There, Plaintiffs were able to convince the district court that the differences in their activities was overcome by the similarities in their general job requirements and duties. *Id.*

Other cases also support Defendants' position. For instance, in *Forney v. TTX Co.*, the plaintiff sought conditional certification in an attempt to recover overtime wages under the FLSA. **Case No. 05-CV-6257, 2006 WL 1030194 (N.D. Ill. April 17, 2006).** While conducting its inquiry in the first stage of the two-tiered process, the district court noted that the success of plaintiff's claims depended on whether employees were exempt under federal regulations. *Id.* **at *2.** The district court explained that in order to obtain conditional certification, plaintiffs "must come forward with evidence indicating her salary and duties were similar to those of other [employees]." *Id.* Ultimately, the court denied conditional certification, explaining that

> Most importantly, [plaintiff] fails to identify a single . . . employee who performed duties similar to hers. As a result, she cannot satisfy the evidentiary burden at step one of the *ad hoc* inquiry. . . . [Plaintiff's] reliance on job descriptions is unpersuasive. Whether similarly situated employees exist depends on the employees' actual qualifications and day-to-day duties, rather than their job descriptions.

*Id.* **at *2-3.** *See also Holt v. Rite Aid Corp.*, **333 F.Supp.2d 1265, 1274-75 (M.D. Ala. 2004) (denying conditional certification in the first stage, after considering evidence that there were substantial differences between individual employees' daily tasks and responsibilities, because plaintiffs had not met their burden of showing that employees were similarly situated);** *Mike v. Safeco Ins. Co. of America*, **274 F.Supp.2d 216, 220-21 (D. Conn. 2003) (holding that plaintiff failed to make an adequate showing that "questions common to a potential group of plaintiffs would predominate a determination of the merits in this case," because the merits of plaintiffs' claim would require a factual analysis of their individual day-to-day work functions).**

With these standards in mind, the Court finds that Plaintiffs fail to make the minimal showing required under the first step. Plaintiffs offer evidence that the employees in question are

all (1) production supervisors and (2) have been paid according to the terms of the compensation incentive plan. Plaintiffs also provide evidence that under the compensation plan, employees routinely worked more than 40-hour weeks, but were not always paid for overtime under the plan. To support their claim, Plaintiffs present pay stubs indicating that Bunyan was not always paid overtime (Doc. 79-3, Exh. 3), even though he routinely worked at least 45 hours per week. Emails sent to the production supervisors concerning the expectation that they arrive 30 minutes before their shift and stay 30 minutes afterwards also support the allegation that Plaintiffs worked more than 40 hours each week but were not paid for the additional time (Doc. 79-3, Exh. 2).

While this evidence provides factual support for the assertion that the employees were paid under the same compensation plan, Plaintiffs provide nothing to indicate that they are similarly situated with respect to their employment duties and circumstances. Even though each of the Plaintiffs and potential claimants were employed as "production supervisors," job descriptions alone are insufficient to clear even the low evidentiary hurdle at this stage. Moreover, Defendants offer evidence that there are significant differences in the nature of work each individual employee performed, as they worked at different locations, on different shifts, and on different production lines.

Given that Plaintiffs provide no evidence to the contrary, the Court finds that Plaintiffs have failed to provide sufficient evidence that they and the potential class members are similarly situated with respect to their work responsibilities and functions. As such, even under the lenient standard of step one, conditional collective action certification is not warranted.

### b. Analysis Under Step Two

Even assuming that Plaintiffs could sustain their burden under the first step of the

inquiry, they certainly cannot sustain the more rigorous showing required in step two of the intermediate approach. Plaintiffs would have to show that, in light of all the evidence currently available, they and potential claimants appear to be "similarly situated" with respect to their job requirements and payment. ***Bouaphakeo*, 2008 WL 2645759, at \*13.** In assessing the evidence, courts generally consider three factors: "(1) the employment and factual settings of plaintiffs; (2) the various defenses available to defendants; and (3) considerations of fairness, procedure, and manageability." *Id.* **(citing *Kautsch*, 2008 WL 294271, at \*2).**

With respect to the first factor, Plaintiffs and potential claimants were all employed by Defendants in its St. Louis County facilities as production supervisors. As such, each was paid according to the terms of the compensation incentive plan (See Doc. 79-3, Exh. 4; Doc. 79-4, Exh. 5, pp. 19–20, 23).

Even though each of the Plaintiffs and potential claimants were employed as "production supervisors," many of them worked at different locations, on different shifts, and on different production lines. As such, it appears from the Defendants' evidence that there are significant differences in the nature of work each individual performed.

Plaintiffs' complaint generally alleges that the production supervisors spent 50% or more of their time maintaining and servicing production line machinery, spent 40% of their time working alongside workers on the production line, and spent 10% or less of their time conducting administrative work and filling out forms. But Defendants submit a variety of affidavits and deposition excerpts which indicate that the time each production supervisor allocates to these tasks varies depending on the person, shift, and location of the work (Cenatiempo Dep., Doc. 85-3, pp. 65, 67-68, 236; Schuchart Aff., Doc. 85-16, ¶ 4).

For instance, Mike Schuchart[3] stated in an affidavit that when working on certain production lines, he primarily ordered replacement parts and maintained records, while conducting no maintenance on machines (Doc. 85-16, ¶ 4). Other employees, however, reported doing no part-ordering on their lines at all (Hassell Aff., Doc. 85-12, ¶ 9). Schuchart also stated that he was often responsible for administrative tasks, such as reviewing payroll records, approving vacation time, and hiring employees (Doc. 85-16, ¶ 11, 15, 16). Plaintiffs, however, claim they spent very little time doing administrative activities. Additionally, Schuchart stated that he only infrequently operated machines (Doc. 85-16, ¶ 17), while the named Plaintiffs estimate that they spent 40% of their average workday doing so.

Affidavits from the production supervisors also indicated that only one supervisor was primarily responsible on each line for preventative maintenance (Bean Aff., Doc. 85-7, ¶ 28; Butler Aff., Doc. 85-8, ¶ 21). The amount of time spent on these activities also varied from 6-7 hours a week on some lines (Butler Aff., Doc. 85-8, ¶ 21) to approximately 2-3 hours on other lines (Black Aff., Doc. 85-9, ¶ 6; Hassell Aff., Doc. 85-12, ¶ 8).

Defendants delineate a number of other areas where production supervisors' duties and work varies from person to person and line to line. From the evidence before the Court, it also appears that the amount of time that different production supervisors dedicated to various tasks and responsibilities varied substantially. Given that Plaintiffs provide a dearth of evidence to the

---

[3] At the hearing, Plaintiff noted that Schuchart's name does not appear on the list of St. Louis County production supervisors originally provided by Defendants during discovery. However, the Court finds Schuchart's affidavit persuasive, as he states that he worked as a production supervisor from April 2001 through December 2006, which is within the relevant time period (Doc. 85-16; ¶ 3).

contrary, the Court need not reiterate the full spectrum of these differences.[4] More importantly, Plaintiffs offer no evidence that the similarities outweigh the differences between the employees.

Likewise, the second factor cuts decidedly against conditional certification. As noted above, Plaintiffs allege that they have been deprived of overtime pay in violation of the FLSA, 29 U.S.C. § 207. However, for certain executive employees, the FLSA includes a variety of exemptions with respect to § 207. *See* **29 U.S.C. § 213; 29 C.F.R. § 541.100.** Defendants argue that Plaintiffs and the potential claimants are exempt employees under these provisions. Therefore, Plaintiffs' claims, and those of the potential claimants, will ultimately turn on whether Plaintiffs can provide evidence that the work and duties they carried out are similar to those of the other production supervisors they wish to join in the collective action.

As already explained above, there are significant differences between the production supervisors at Defendants' facilities with respect to the types of work they perform and the amount of time allocated to their various tasks. The disparities between the employees' job responsibilities and duties indicate that the Court will have to consider the individual circumstances of each Plaintiff in order to resolve the issue of whether Plaintiffs are exempt employees.[5]

A number of district courts have recognized that where a fact-specific analysis of each individual plaintiff's employment responsibilities would be required to determine their status,

---

[4] It would not surprise the Court if even greater differences were uncovered if the proposed class was expanded to include production supervisors throughout the United States, as Plaintiffs apparently seek.

[5] While the Court considers the defenses available to the Defendants, this analysis does not consider whether the defense itself is meritorious. The Court states no opinion as to whether Plaintiffs are actually exempt employees under the FLSA. Rather, the analysis here simply indicates that conditional certification would be inefficient because the Court will have to undertake an analysis of each employee's work responsibilities in order to decide the issue.

class certification is not appropriate. *See Reich v. Homier Distributing Co.*, **362 F.Supp.2d 1009, 1013-14 (N.D. Ind. 2005) (collecting cases and denying certification because "potential class members [are not] similarly situated where liability depend[s] on an individual determination of each employee's duties.");** *Clausman v. Nortel Networks, Inc.*, **Case No. 02-CV-0400, 2003 WL 21314065 (S.D. Ind. 2003) (withdrawing certification because "members of [defendant's] sales staff performed their duties in a variety of ways, making individual inquiry necessary to determine whether each was properly classified" and "the factual inquiry necessary to make that determination weighs heavily against conditionally certifying a plaintiff class.");** *see also Harris*, **2006 WL 1994586, at \*5 (collecting cases; noting that "multiple courts in this circuit and elsewhere have refused to conditionally certify a class at the first stage of the analysis when the determination of whether certain employees were improperly classified as exempt would require a highly individualized inquiry.");** *Holt*, **333 F.Supp.2d at 1274-75 (denying certification and finding that plaintiffs were not similarly situated because "the court would have to inquire . . . as to the daily tasks of each putative collective action member to determine whether they are similarly situated to the persons identified by the Plaintiffs, and then, on the merits, whether they had suffered an FLSA violation because they were not eligible for overtime compensation. Only once those determinations had been made could any collective proof as to the number of overtime hours be relevant.");** *Pfohl v. Farmers Ins. Group*, **2004 WL 554834, at \*10 (C.D. Cal. Mar. 1, 2004) ("the exempt or non-exempt status of hundreds of independent contractor adjusters would need to be determined on an employee-by-employee basis. This would be inefficient and impractical, thereby defeating the purpose of a collective action.").**

Because of the dissimilarities between Plaintiffs' individual employment duties and responsibilities, the Court finds that an individualized analysis will be required in order to resolve Plaintiffs' claims. In light of the need for individualized inquiries, it should be no surprise that certification of a collective action in this particular case would make the litigation unmanageable and inefficient. As such, conditional certification is not appropriate here.

Plaintiffs have not carried their burden of showing that the similarities between the production managers outweigh their differences, and as a result, the Court must deny Plaintiffs' request for conditional certification.

### C. Conclusion

In conclusion, based on the evidence currently before the Court, Plaintiffs fail to sustain their burden of proving, at either stage of the two-step inquiry, that they and the potential plaintiffs are similarly situated. Accordingly, the Court **DENIES** Plaintiffs' motion for conditional collective action certification (Doc. 79).

**IT IS SO ORDERED.**

**DATED this 31st day of July 2008.**

                                          **s/ Michael J. Reagan**
                                          **MICHAEL J. REAGAN**
                                          **United States District Judge**